# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SKYRISE CONSTRUCTION GROUP, LLC,

    **Plaintiff,**

    **v.**                       **Case No. 18-CV-381**

ANNEX CONSTRUCTION, LLC,

    **Defendant.**

---

## DECISION AND ORDER ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

---

Skyrise Construction Group, LLC, a subcontractor providing construction services for the commercial building industry, sues Annex Construction, LLC, a general contractor who develops student housing near university campuses throughout the Midwest, for breach of contract, promissory estoppel, negligent misrepresentation, and violations of the Wisconsin and Illinois Deceptive Trade Practices Acts. Both parties move for summary judgment. Skyrise argues that the evidence establishes that the parties entered into a contract and Annex breached it. Alternatively, Skyrise argues that it is entitled to relief on its extra-contractual claims. Conversely, Annex argues the evidence establishes that the parties did not enter into a contract; rather, they simply engaged in protracted negotiations. Annex further argues Skyrise's alternative theories of recovery fail as a matter of law. For the reasons further explained below, Skyrise's motion for summary judgment is denied and Annex's motion for summary judgment is granted.

## UNDISPUTED FACTS

In the early summer of 2017, Annex issued bid requests seeking bids from subcontractors to work on its Annex 71 Oshkosh 140 Unit Student Housing Project through an electronic platform called "iSqFt," used to solicit subcontractors to submit bids for the scope of work necessary to complete the project. (Pl.'s Proposed Findings of Fact ("PPFOF") ¶ 1, Docket # 26 and Def.'s Response to PPFOF ("Def.'s Resp.") ¶ 1, Docket # 29.) Skyrise developed an estimate to complete the rough framing and window installation work on the project and on or about July 7, 2017, electronically submitted a $970,000.00 bid to perform the work. (*Id.* ¶¶ 2–3.) In 2017, Annex's Tom Tomaszewski was the sole corporate officer who negotiated and ultimately decided on which subcontractor bids Annex would accept for construction services at the Annex 71 project. (*Id.* ¶ 4.)

On July 19, 2017, Skyrise's John Trojan (the project manager), at the direction of Ignacio Garcia (managing member of Skyrise, LLC), electronically emailed a revised bid for $950,000.00 to perform the rough framing and window installation work. (*Id.* ¶ 6.) Neither party signed this document. (*Id.*) Upon receipt of Skyrise's revised bid, Tomaszewski sent an email containing a letter of intent. (*Id.* ¶ 7.) The letter of intent stated that it was "the intention of Annex Construction, LLC to enter into a contract with Skyrise Construction Group, LLC for rough carpentry work associated with the Annex 71 project . . . . I look forward to working with you on the project. We will work on getting you contract documents in the near future." (Declaration of Thomas Tomaszewski ("Tomaszewski Decl."), ¶ 6, Ex. C, Docket # 23 and Docket # 23-1 at 7–8.)

Upon receipt of the letter of intent, Skyrise added the Annex 71 project to Skyrise's fall work schedule, setting aside 16–18 weeks of framing and window installation work at

the project to start the first week of October 2017. (PPFOF ¶ 11 and Def.'s Resp. ¶ 11.) On August 2, 2017, Annex emailed a proposed contract document to Skyrise. (*Id.* ¶ 12.) On September 6, 2017, Annex emailed Skyrise the proposed contract a second time for its review. (*Id.* ¶ 14.) On September 7, 2017, Skyrise sent Annex an email stating that Trojan was "still reviewing the contract and should have it back to [Annex] tomorrow." (*Id.* ¶ 15.)

On September 13, 2017, Skyrise, by Trojan, emailed Annex stating that Garcia was requesting that Annex sign the bid proposal and return it to Skyrise while Garcia was reviewing the contract documents. (*Id.* ¶ 16; Tomaszewski Decl. ¶ 9, Ex. G, Docket # 23-1 at 67.) Garcia avers that it is Skyrise's standard practice to have the bid signed and returned to Skyrise. (Affidavit of Ignacio Garcia ("Garcia Aff.") ¶ 13, Docket # 18.) On September 22, 2017, Tomaszewski signed Skyrise's July 19, 2017 bid and emailed a copy to Skyrise. (PPFOF ¶ 17 and Def.'s Resp. ¶ 17.) Tomaszewski wrote "Contract Exhibit A" on the signed proposal. (Tomaszewski Decl. ¶ 10, Ex. H, Docket # 23-1 at 70–71.)

On October 11, 2017, Tomaszewski received an email from Amy Harnish, also of Annex, forwarding documents received at Annex's previous address. (Tomaszewski Decl. ¶ 11, Ex. I, Docket # 23-1 at 72.) The documents consisted of the revised proposed contract with handwritten edits by Garcia. (*Id.*; PPFOF ¶ 28 and Def.'s Resp. ¶ 28.) Garcia signed this document on behalf of Skyrise; however, Annex never signed this document. (Docket # 23-1 at 78; PPFOF ¶ 28 and Def.'s Resp. ¶ 28.)

Throughout October 2017, the parties engaged in discussions regarding an expanded scope of work for Skyrise. (PPFOF ¶ 32 and Def.'s Resp. ¶ 32; Garcia Aff. ¶¶ 21–28; Affidavit of Attorney Gary W. Thompson ¶ 2, Deposition of Thomas Tomaszewski ("Tomaszewski Dep.") at 29–30, Docket # 19.) On October 3, 2017, Skyrise provided

Annex with a proposal for an expanded scope of work on the project. (PPFOF ¶ 32 and Def.'s Resp. ¶ 32.) Skyrise provided a revised proposal on October 31, 2017. (Tomaszewski Decl. ¶ 13, Ex. K, Docket # 23-1 at 99–101.) The parties dispute who initiated the discussions regarding expanding the scope of work—with Annex stating that Skyrise insisted on presenting an expanded scope of work (Tomaszewski Dep. at 30) and Skyrise stating that Annex approached it to do an expanded bid (Garcia Aff. ¶ 21). The parties further dispute why Skyrise bid on an expanded scope of work. Skyrise asserts that Annex was severely behind schedule on the project and Tomaszewski asked Garcia to work up an expanded bid proposal to get the project on track. (Garcia Aff. ¶¶ 18–21, 26.) Tomaszewski disputes that Annex was ever behind schedule and states that after an October 2017 on-site visit, Skyrise said that "this is no good and we can't do this," so Tomaszewski let them try to put something together that they thought would work. (Tomaszewski Dep. at 29–30.)

On November 2, 2017, Annex emailed Skyrise advising as follows: "We are going to go ahead and pass on this guys. I appreciate the hard work however I am going to bring in a large framing company we have a very good relationship with and can meet our timeframe and schedule at a much lower cost. I will have our council [sic] get you a letter on the original contract that you signed in the near future." (PPFOF ¶ 33 and Def.'s Resp. ¶ 33; Tomaszewski Decl. ¶ 14, Ex. L, Docket # 23-1 at 104.) On November 3, 2017, Annex, by counsel, sent Skyrise a written notice stating as follows: "This letter shall serve as written notice to Subcontractor that Contractor does not accept your revised proposal dated October 31, 2017. In addition, Contractor will not be accepting and countersigning the Agreement as marked-up by Subcontractor and is therefore null and void." (PPFOF ¶ 34 and Def.'s Resp. ¶ 34; Tomaszewski Decl. ¶ 15, Ex. M, Docket # 23-1 at 105.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

At the heart of this dispute is whether Annex and Skyrise entered into a contract for Skyrise to perform rough framing and window installation work on the Annex 71 project. Alternatively, if no contract was reached, Skyrise alleges several extra-contractual theories of relief, namely, promissory estoppel, negligent misrepresentation, and violations of the Wisconsin and Illinois Deceptive Trade Practices Acts. The parties do not dispute that except for Skyrise's claim under the Illinois Deceptive Trade Practices Act, Wisconsin law governs the plaintiff's claims. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits."). I will address each claim in turn.

*1.  Breach of Contract*

Under Wisconsin law, in evaluating a breach of contract claim, a court must determine whether a valid contract exists, whether a party has violated its terms, and whether any such violation is material such that it has resulted in damages. *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶ 10, 267 Wis. 2d 873, 880, 672 N.W.2d 141, 144. Annex and Skyrise dispute whether a valid contract exists. "The elements of an enforceable contract are offer, acceptance, and consideration." *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶ 20, 362 Wis. 2d 100, 112, 862 N.W.2d 879, 885. "The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract." *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 837, 520 N.W.2d 93, 96 (Ct. App. 1994). An acceptance that varies the terms of the offer constitutes a rejection and a counteroffer. *Fricano v. Bank of Am. NA*, 2016 WI App 11, ¶ 29, 366 Wis. 2d 748, 770, 875 N.W.2d 143, 153. There is no contract formed until the counteroffer is accepted. *Id.*

Wisconsin courts have further defined consideration as "a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor . . . . Neither the benefit to the promisor nor the detriment to the promisee need be actual." *Friedlen*, 2015 WI 45, ¶ 21 (internal quotation and citation omitted).

Agreements to agree, however, are not enforceable contracts. *See Dunlop v. Laitsch*, 16 Wis. 2d 36, 42, 113 N.W.2d 551 (1962). Whether an agreement will be binding depends on the parties' intent. *Peninsular Carpets, Inc. v. Bradley Homes, Inc.*, 58 Wis. 2d 405, 413–16, 206 N.W.2d 408, 411–14 (1973). The parties' intent is discerned from their "words, written and oral, and their actions." *Household Utils., Inc. v. Andrews Co.*, 71 Wis. 2d 17, 29, 236 N.W.2d 663, 669 (1976). Wisconsin takes an objective view of "intent." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7th Cir. 1987). Thus, the "status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves . . . the binding force of the document depends on public or shared expressions." *Id.* at 814–15. As such, though intent is usually a question of fact for the jury, when the public or shared expressions of intent are undisputed, summary judgment is appropriate. *Id.* Finally, a signature is not required for a valid contract (unless the parties have specified signatures are a condition modifying assent), so long as the evidence shows an intent by the parties to be bound. *See Chudnow Const. Corp. v. Commercial Disc. Corp.*, 48 Wis. 2d 653, 657, 180 N.W.2d 697, 698 (1970).

The timeline of events is essentially undisputed. The parties agree that Skyrise's July 7, 2017 bid was an initial offer and that Annex's July 19, 2017 response constituted a rejection of the initial bid and a counter-offer. (Pl.'s Br. in Supp. of Summ. Judg. at 15, Docket # 17; Def.'s Br. in Opp. at 4, Docket # 27.) The parties also do not seemingly

dispute that the events occurring in August and prior to September 22, 2017 did not establish the formation of a contract. It would be difficult for Skyrise to argue otherwise, considering on September 7, 2017 Skyrise emailed Annex stating that Trojan was still reviewing the contract (PPFOF ¶ 15 and Def.'s Resp. ¶ 15) and on September 13, 2017, Trojan emailed Annex stating that Garcia was reviewing the contract documents (*Id.* ¶ 16).

At this point in the timeline of events, the parties' agreement ends. While Annex argues a binding contract was never formed, Skyrise argues that a binding contract was formed on September 22, 2017 when Tomaszewski signed the previously rejected July 19, 2017 bid without condition and delivered it to Skyrise. (Pl.'s Br. in Supp. of Summ. Judg. at 16.) But Annex's contention is belied by the undisputed facts. Garcia avers that on September 13, 2017, he directed Trojan to email Tomaszewski to advise him that Annex's contract documents remained under review; however, Garcia wanted Annex to sign and return Skyrise's July 19, 2017 bid proposal at that time, as that was Skyrise's standard practice. (Garcia Aff. ¶ 13.) Skyrise argues that even though the contract documents were still under review, "Skyrise needed Annex to sign the bid in order for Skyrise to commit to perform the framing and window installation work at the Annex 71 Project." (Pl.'s Br. in Supp. of Summ. Judg. at 16.) Tomaszewski complied with Skyrise's request on September 22, 2017 by signing the proposal; however, he explicitly wrote "Contract Exhibit A" on the document. By Garcia's own admission that the contract documents were still under review at the time he requested Annex sign and return the July 19, 2017 bid, no contract was formed as of September 22, 2017.

Skyrise briefly argues that alternatively the contract was formed on October 10, 2017 when Garcia signed the marked-up agreement and sent it to Annex. Skyrise argues that to

the extent the contract formed on September 22, 2017, then the October 10, 2017 signature is a nullity, because a party to a contract cannot unilaterally modify its material terms without the other party's assent. Skyrise alternatively argues that if the contract was not formed on September 22, 2017, then the changes Skyrise made to the agreement were not material and the contract was formed on October 10, 2017. (*Id.* at 18.) Skyrise does not develop this alternative argument. For this reason, I will not consider Skyrise's argument that the contract was alternatively formed on October 10, 2017. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that '[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel,' and we have warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'") (internal citation omitted). Because I find that no valid contract exists between the parties, as to the breach of contract claim, Skyrise's motion for summary judgment is denied and Annex's motion for summary judgment is granted.

2. *Promissory Estoppel*

Skyrise alternatively argues that if no contract exists, it is entitled to relief under a theory of promissory estoppel. A claim of promissory estoppel involves three elements: (1) whether the promise is one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) whether the promise induced such action or forbearance; and (3) whether injustice can be avoided only by enforcement of the promise. *Bicknese v. Sutula*, 2003 WI 31, ¶ 12, 260 Wis. 2d 713, 722, 660 N.W.2d 289, 294. The first two requirements are issues of fact while the third requirement, that enforcement of the promise is necessary to avoid injustice, involves a

policy decision by the court. *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis. 2d 417, 422, 321 N.W.2d 293, 296 (1982).

Skyrise argues that the undisputed evidence shows that Annex promised Skyrise a contract for the framing and window installation on the Annex 71 project and this induced Skyrise to forgo other framing work from October 2017 to March 2018. (Pl.'s Br. in Supp. of Summ. Judg. at 20–21.) I disagree that the undisputed evidence shows that Annex promised Skyrise the contract. Skyrise points to the July 19, 2017 letter of intent, Skyrise's September 13, 2017 email to Annex requesting Annex sign the July 19, 2017 bid, Tomaszewski's September 22, 2017 signature on the bid, and Skyrise's attendance at an October 9, 2017 site meeting as evidence that Skyrise was promised the framing and window installation job. As discussed above, the evidence does not establish that Annex promised Skyrise the subcontract. The letter of intent clearly indicates Annex wanted to contract with Skyrise, but it does not promise that an agreement would be reached. Rather, Tomaszewski asked Trojan to revise his bid proposal and indicated that he would work on getting contract documents to Skyrise. (Tomaszewski Decl., ¶ 6, Ex. C, Docket # 23-1 at 7–8.)

Again, Tomaszewski's September 22, 2017 signature on the bid proposal came only after Trojan asked him to sign it based on Skyrise's standard practice and at a time when Garcia acknowledged he was still reviewing the contract. (Garcia Aff. ¶ 13.) And Tomaszewski attached the contract as an exhibit, indicting that it was not the final document. Furthermore, Skyrise's attendance at the site meeting does not indicate it was promised the job. While it may have been reasonable for Skyrise to expect the parties would ultimately enter into a binding agreement, it was not reasonable for Skyrise to rely on its July 2017 bid to forgo making other bids on other projects. After all, Skyrise "knew, or at

least should have known, that the negotiations could fall apart before the parties entered into a binding agreement." *See C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 809 (7th Cir. 2016).

Further, Skyrise cannot show that injustice can be avoided only by enforcing the alleged subcontract agreement. Promissory estoppel is an equitable contract remedy that enforces a relied upon promise in the absence of a contract, but only to the extent that justice requires. *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 66, 262 Wis. 2d 127, 160, 663 N.W.2d 715, 731. Skyrise relies on Wisconsin cases enforcing the so-called *Drennan* rule (established in *Drennan v. Star Paving Co.*, 333 P.2d 757, 760 (Cal. 1958)) to enforce subcontract bids. *Drennan* explains that when a general contractor uses a subcontractor's bid in making its own bid to the project owner, it relies on the subcontractor's bid. *C.G. Schmidt, Inc.*, 825 F.3d at 807. Because the subcontractor should expect a general contractor to incorporate the subcontractor's bid, "it is only fair that [the general contractor] should have at least an opportunity to accept [the subcontractor's] bid after the general contract has been awarded to him." *Id.* (quoting *Drennan*, 333 P.3d at 760). Wisconsin courts have followed this rule, finding that subcontractors were bound to their bid by promissory estoppel because the subcontractor's bid was a promise that the general contractor reasonably relied on in submitting its own bid to the owner. *See Seater Const. Co. v. Rawson Plumbing, Inc.*, 2000 WI App 232, 239 Wis. 2d 152, 619 N.W.2d 293. But the Wisconsin Court of Appeals in *Seater* specifically distinguished the *Drennan* rule from situations in which a subcontractor was attempting to compel a general contractor to use its services based on the acceptance of a bid to the owner that included the subcontractor's bid. Relying on the reasoning articulated in *Sandroni v. Waukesha Cty. Bd. of Sup'rs*, 173 Wis. 2d 183, 496 N.W.2d 164 (Ct. App. 1992),

in which the court of appeals found a subcontractor did not have standing to make a claim against a general contractor, the *Seater* court stated:

> [T]he reason a subcontractor is bound by its bid is the existence of justifiable reliance by the general on the subcontractor's price for specified work. The general makes his bid after gathering bids and evaluating a number of subcontract bids. Once the general wins the prime contract . . . he is bound to his own bid. For the subcontractor to be able to refuse to perform would subject the general to a financial detriment . . . Ample justification exists for binding the subcontractor . . . .

*Id.* ¶ 31 (quoting *Sandroni*, 173 Wis. 2d at 189, 496 N.W.2d at 166). The *Sandroni* court further explained that a subcontractor does not rely on the general contractor to its detriment because the time and expense involved in preparing a bid is part of the overhead of doing business. *Sandroni*, 173 Wis. 2d at 189, 496 N.W.2d at 166. Thus, the *Drennan* rule does not apply to this situation. Furthermore, since the evidence does not demonstrate that Annex made a definitive promise to Skyrise that it had the subcontract, justice does not require Annex to be liable for Skyrise's alleged losses. For these reasons, Annex is entitled to summary judgment on Skyrise's promissory estoppel claim.

### 3. *Negligent Misrepresentation*

Skyrise also alternatively argues that if no contract exists, it is entitled to relief under a theory of negligent misrepresentation. The elements of negligent misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it. *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 113, 723 N.W.2d 156, 163. Skyrise argues Annex made the following false representations of fact: Skyrise had the framing subcontract; the start date for Skyrise's scope of work would be the first week of October 2017; and that even though the parties

were negotiating an expanded scope of work, Skyrise had the framing subcontract. Again, the record evidence does not show that Annex ever represented to Skyrise that it had the framing subcontract. Even assuming Annex said Skyrise could begin framing work the first week of October, Skyrise does not show that this statement was an untrue representation of fact. Rather, it appears the project was falling behind (as often occurs with construction projects), and Skyrise asserts Annex informed them construction could begin in December 2017. (Garcia Aff. ¶¶ 18–21.) Because Skyrise cannot show Annex made a false representation of fact, Annex is entitled to summary judgment on Skyrise's negligent misrepresentation claim.

### 4. *Wis. Stat. § 100.18 Claim*

Skyrise also seeks relief pursuant to Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18. To prevail on a Wis. Stat. § 100.18 claim, Skyrise must show that Annex: (1) made a representation to "the public" with the intent to induce an obligation; (2) the representation was untrue, deceptive, or misleading; and (3) the representation caused Skyrise a pecuniary loss. *See K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 121–22, 732 N.W.2d 792, 798.

While Skyrise argues that Wis. Stat. § 100.18 is applicable to the transaction at issue in this case, I am not convinced. Skyrise is correct that commercial entities can recover under Wis. Stat. § 100.18. *See id.* But Skyrise is incorrect that § 100.18 is so broad that it protects "any person" from untrue, deceptive, or misleading statements made with the "intent to induce the public in any manner to enter into any contract." (Pl.'s Br. in Supp. of Summ. Judg. at 27.) Rather, § 100.18 protects "the public" from untrue, deceptive, or misleading statements made with the intent to induce the public to enter into "any contract

or obligation *relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service . . . .*" (emphasis added). Although unpublished, the Wisconsin Court of Appeals' decision in *Bundy v. Univ. of Wisconsin-Eau Claire*, 1998 WL 265042, 220 Wis. 2d 357, 582 N.W.2d 504 (Ct. App. 1998) is instructive. In *Bundy*, the plaintiff sued the University of Wisconsin-Eau Claire regarding an alleged promise made to him regarding his employment status at the university. The plaintiff brought a claim under Wis. Stat. § 100.18. The court stated that the plaintiff "ignores the context in which [the] principles [of § 100.18] apply; that is, to protect consumers from unfair marketing practices." *Id.* at *4. The court found that a review of § 100.18 cases "confirms the scope of its applicability," which is "a consumer protection issue." *Id.* The court found that no case dealt with a claim of fraudulent statements allegedly made to induce entry into an employment contract. *Id.*

It is unclear how Annex allegedly trying to induce Skyrise into a subcontractor agreement through allegedly fraudulent statements constitutes a contract relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service. It simply does not fit into any of these categories and does not fit the purpose of the statute of protecting consumers from unfair marketing practices.

Further, beyond stating that it "is undisputed that Annex's representations by word and deed where [sic] untrue, deceptive or misleading," because Annex never suggested that Skyrise would not be obligated to perform the work on the project (Pl.'s Br. in Supp. of Summ. Judg. at 27), as further discussed above, Skyrise has not shown Annex made any representations that were untrue, deceptive, or misleading. *See N. Am. Mech., Inc. v. Diocese of Madison*, 1999 WL 516803, *2 n.3, 229 Wis. 2d 735, 600 N.W.2d 55 (Ct. App. 1999) (though defendant raised the issue that § 100.18 was inapplicable to solicitation for a bid to

a subcontractor, court declined to address that argument because it found defendant did not make a false statement of fact). For these reasons, Annex is entitled to summary judgment on Skyrise's Wis. Stat. § 100.18 claim.

### 5. *Illinois Consumer Fraud Act Claim*

Finally, Skyrise seeks relief pursuant to the Illinois Consumer Fraud Act ("ICFA") based on the face-to-face meeting that occurred between the parties at Annex's Illinois office on October 24, 2017. To prevail on an ICFA claim based on deceptive conduct, a plaintiff must show: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception. *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013). Again, Skyrise alleges that Annex's deceptive acts include the July 19, 2017 letter of intent, Tomaszewski's September 22, 2017 signature on the bid document, the October 9, 2017 site meeting, and the November 2, 2017 email stating Annex was using a different subcontractor for the project. (Pl.'s Br. in Supp. of Summ. Judg. at 31.) For the reasons explained above, Skyrise has not shown Annex's actions were deceptive; rather, the parties were simply engaging in negotiations, hoping to enter into a subcontractor agreement, but no agreement was ultimately reached. Thus, Annex is entitled to summary judgment on Skyrise's ICFA claim.

## CONCLUSION

Skyrise submitted a bid to perform rough framing and window installation on a project in which Annex was the general contractor. The bid began a series of negotiations spanning the course of several months. Despite Skyrise's assertions otherwise, the record

does not demonstrate that a contract was ever reached between the parties, nor does the record show Skyrise is entitled to relief on any of its extra-contractual theories. For these reasons, Skyrise's motion for summary judgment in denied and Annex's motion for summary judgment is granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket # 16) is **DENIED**. The defendant's motion for summary judgment (Docket # 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.


Dated at Milwaukee, Wisconsin this 20th day of February, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge